UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
LIONEL KING,

               Petitioner,

               -against-

WILLIAM PHILLIPS, Superintendent,
Green Haven Correctional Facility,

               Respondent.
------------------------------------------------------X

MEMORANDUM & ORDER

03-CV-4354 (CBA)

AMON, UNITED STATES DISTRICT JUDGE:

<u>Pro se</u> petitioner Lionel King seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his conviction in Queens County for the murder of Dionne Desouza. For the reasons set forth below, the petition is denied.

## BACKGROUND[1]

In the early morning of July 2, 1999, petitioner went to the home of his ex-girlfriend, Dionne Desouza, in Queens County, and repeatedly stabbed her in the abdomen, left arm, hands, ear, neck, and head, causing her death. Later that same morning, petitioner went to the home of Patsy Niles, in Brooklyn, and repeatedly stabbed her in the face, arms, neck, ear, and shoulder, causing her death. Petitioner then returned to his home in Brooklyn and called the police, stating that he had killed two people and that he was going to kill himself. Immediately thereafter, police officers arrived at petitioner's home and arrested him.

---

[1] Because petitioner entered a plea of guilty and, thus, did not go to trial, the information for this background section is derived from the parties' submissions in conjunction with petitioner's application for habeas corpus relief.

1

For the acts committed against Dionne Desouza, petitioner was charged in Queens County with two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]) and one count of Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01[2]). On July 3, 2001, petitioner pled guilty in Queens County to Murder in the Second Degree in exchange for a promised sentence of fifteen years to life imprisonment. That same day, petitioner also plead guilty in Kings County to Murder in the Second Degree for the killing of Patsy Niles. On July 17, 2001, petitioner was sentenced in Queens County to a term of imprisonment of fifteen years to life, which was to run consecutively with the Kings County sentence. On August 16, 2001, petitioner was sentenced in Kings County to a consecutive term of imprisonment of fifteen years to life.

On November 2, 2001, petitioner filed a notice of appeal in the New York State Supreme Court, Appellate Division, Second Department, which the court construed as a motion for an extension of time to appeal from his judgment of conviction. On January 17, 2002, the Appellate Division denied petitioner's motion. On February 13, 2002, petitioner filed a motion in state court to vacate his judgment pursuant to NY. Crim. Proc. L. § 440.10 and 440.20.[2] Petitioner argued that he was denied the effective assistance of counsel, that his plea was not knowing and voluntary, and that his constitutional and statutory rights had been violated. On April 12, 2002, the court summarily denied petitioner's motion. Petitioner sought leave to appeal this decision to the Appellate Division on July 8, 2002, but his motion was summarily denied by the Appellate Division on October 11, 2002.

---

[2] Petitioner and Respondent give two different dates for the filing of petitioner's motion to vacate judgment in Queens County. Petitioner purports to have filed the motion on February 13, 2002, whereas respondent contends that it was filed on March 5, 2002. For the purposes of this petition, to afford petitioner the benefit of the doubt, the Court will assume that the date pled by petitioner is correct.

Petitioner filed the instant § 2254 petition on August 27, 2003. He claims that he was unable to fully comprehend the consequences of his guilty plea and that he was denied the effective assistance of counsel. Respondent argues that petitioner's motion should be dismissed as untimely.

DISCUSSION

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a one-year statute of limitations for habeas corpus petitions filed after the date of the AEDPA's enactment, April 24, 1996, which begins to run at different times based on the circumstances of the case. 28 U.S.C. § 2244(d)(1).[3] In general, the statute begins to run on the date the judgment of conviction becomes final, which, where no direct appeal is sought, occurs upon "the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Alternatively, where applicable, the statute of limitations may begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The AEDPA also provides for the tolling of the one-year statute of limitations under certain circumstances, including for the "time

---

[3] The statute provides that the statute of limitations shall begin to run on the latest of the following:
(A) the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1).

3

during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

I.  Statutory Tolling

In this case, petitioner was sentenced on July 17, 2001. Under New York law, his time for appeal expired, and his conviction thus became final, thirty days later, on August 16, 2001. N.Y. C.P.L. § 460.10(1)(a); 28 U.S.C. § 2244(d)(1)(A). Petitioner did not file the instant § 2254 petition until August 27, 2003, 741 later. Although petitioner filed a notice of appeal, the Appellate Division treated it as a motion for an extension of time to file an appeal and ultimately denied the motion. A motion for an extension of time to file an appeal does not toll the limitations period. See Bethea v. Girdich, 293 F.3d 577, 579 (2d Cir. 2002) (expressing "doubt" that a motion for an extension of time to file an appeal could toll the limitations period, as such a motion is not a properly filed application for state-post conviction or other collateral review) . Thus, the period of limitations was tolled only from February 13, 2002 to October 11, 2002, a total of 241 days, when petitioner's motion to vacate his judgment pursuant to NY. Crim. Proc. L. § 440.10 and 440.20 was pending. Excluding this time period, a total of 500 days elapsed between August 16, 2001 and August 27, 2003, the date upon which petitioner filed the instant habeas petition. The petition is therefore untimely under § 2244(d)(1)(A).

Even assuming *arguendo* that the statute of limitations was tolled during the pendency of petitioner's motion for an extension of time to file an appeal, a proposition about which the Second Circuit has expressed clear "doubt," the petition is still untimely. See id. Petitioner's motion for an extension of time was pending from November 2, 2001 to January 17, 2002, a total of 77 days. Even excluding this additional 77 days, a total of 423 days elapsed between August 16, 2001 and August 27, 2003, the date upon which petitioner filed this action. This length of

time clearly exceeds the one-year period of limitations under the AEDPA for the filing of a habeas petition pursuant to 28 U.S.C. § 2254.

II.     Equitable Tolling

The AEDPA's one-year limitations period may be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him from filing his petition on time" and that he "acted with reasonable diligence throughout the period he seeks to toll." Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000), cert. denied 531 U.S. 840 (2000)).  Petitioner claims that he is entitled to equitable tolling due to the fact that one of six legal folders concerning his case was lost by prison officials during his transfer from Clinton Correctional Facility to Greenhaven Correctional Facility on March 10, 2003.

Given that the statute of limitations was tolled from February 13, 2002 to October 11, 2002, a total of 240 days, when his motion to vacate the state court judgment pursuant to NY. Crim. Proc. L. § 440.10 and 440.20 was pending, the one-year statutory limitations period expired on April 14, 2003, approximately one month after petitioner's transfer.  This would leave open the possibility of equitable tolling if petitioner could establish the requisite elements needed to justify such a remedy, including extraordinary circumstances that prevented him from filing the petition on time.  The Second Circuit has held that "the *intentional* confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is 'extraordinary' as a matter of law." Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000) (emphasis added).  Lack of access to all necessary legal documents does not otherwise amount to extraordinary circumstances warranting equitable tolling.  See Padilla v. United States, 2002 U.S. Dist. LEXIS 22298, at *12 (S.D.N.Y. Nov. 19, 2002).  Petitioner offers no evidence to

5

show, and apparently does not argue, that the loss of one of his six legal folders was an intentional confiscation.

Even assuming that the lost folder could amount to an extraordinary circumstance, petitioner still would not qualify for equitable tolling. When extraordinary circumstances occur, a court still must determine whether they prevented a petitioner from filing his habeas petition on time. Valverde, 224 F.3d at 133; Smith, 208 F.3d at 17. The petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 133. Petitioner has failed to make the requisite showing in this case. As discussed, petitioner's transfer occurred on March 10, 2003, and his § 2254 petition was not filed until August 29, 2003, approximately four and one half months after the April 14, 2003 expiration of the statutory limitations period. Even assuming *arguendo* that the statutory limitations period was tolled for an additional 77 days during the pendency of petitioner's motion for an extension of time to file an appeal, the period of limitations would have expired on June 30, 2003, approximately three and one half months after petitioner's transfer, but nearly two months before the date upon which petitioner filed this action.[4] According to petitioner, the two month delay in filing was occasioned by the fact that the lost folder contained copies of appellate decisions without which he allegedly could not determine

---

[4] To be clear, the Court is not of the view that June 30, 2003 is the date on which the period of limitations actually expired. This date would only apply if petitioner's motion for an extension of time to file an appeal tolled the statute of limitations for an additional 77 days. In practice, it is immaterial whether the additional 77 days are counted, as an April 14, 2003 expiration date and a June 30, 2003 expiration date are both past the date of petitioner's transfer and prior to the date upon which the instant petition was filed. The Court thus assumes a June 30, 2003 expiration date for this portion of its analysis to afford petitioner the benefit of the doubt.

when his time to file a habeas petition would expire or on what grounds he should base such an action. Petitioner has failed to show, however, that he was actually prevented from timely filing his petition using the five legal folders in his possession — particularly given the fact that the petition was ultimately filed without the benefit of the missing materials.[5] See Hizbullahankhamon, 255 F.3d at 76; Valverde, 224 F.3d at 134; Hardy v. Conway, 299 F.Supp.2d 159, 161 (E.D.N.Y. 2004). In addition, it is unclear based on the record before the Court whether petitioner exercised reasonable diligence during the period of limitations he wishes to toll.[6] See Padilla, 2002 U.S. Dist. LEXIS 22298, at *13 ("even if the delays in

---

[5] The Court also questions whether petitioner had in his possession some or all of the materials used to file his § 440 motion, which raised essentially the same claims as his habeas petition. It seems plausible, based on the fact that petitioner sought a copy of the § 440 motion from the District Attorney's office, that any copy petitioner initially retained of the § 440 motion was among the items in the lost folder. (See Petitioner's Affirmation dated Nov. 26, 2003, Ex. B at 1.) However, it is unclear when petitioner made this request of the District Attorney's officer, and in any event, petitioner has failed to specify whether the § 440 motion was actually lost in the missing folder or whether he lacked a copy for some other reason. See Padilla, 2002 U.S. Dist. LEXIS 22298, at *11 ("Without knowing what materials [petitioner] was missing and how he attempted to obtain them, it is impossible to assess the validity of [his] claim that his ability to file his petition was hindered by his late access to them.").

[6] Though petitioner did ultimately write to the District Attorney's office and the Appellate Division to seek to replace the lost materials, the only evidence he provides of these requests show that they were made after he filed his habeas petition. (See Petitioner's Affirmation dated Nov. 26, 2003, at 6 & Ex. B at 1.) Petitioner claims to have noticed upon his arrival at Greenhaven that one of his folders was missing, though he apparently chose not to put in a "formal claim" for the missing folder and other miscellaneous lost items. (Id. at 6-7.) Petitioner alleges that "at that time" he brought the missing items to the attention of an officer who told petitioner that he would look into the matter. (Id. at 7.) Petitioner further claims that he later brought the fact of the missing items to the attention of an A-block officer who said he would look into the matter and get back to petitioner. (Id.) Days later, when petitioner had received no further word, he again asked the A-block officer about the folder, and the officer again told petitioner that he would follow up on the situation. (Id.) Petitioner claims that, a few days thereafter, he approached the A-block officer a third time about the missing items, and that he was told "to back off or else you will be written up for harassment" and "do not inquire into the matter any further until I get back to you." (Id. at 7-8.) Petitioner made no further inquiries about the missing materials, allegedly out of fear of retribution, from then until the time he filed the instant petition. (Id. at 8.)

7

receiving whatever documents he believed necessary could be considered extraordinary, [petitioner] has not shown that he made any effort to file his petition without them").

## CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability will not issue, as petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(e)(2). The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
April 25, 2005

Carol Bagley Amon
United States District Judge